**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| IDRISSA OSEI, Plaintiff, | ) | |
| v. | ) | C.A. No. 06-274T |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY Defendant. | ) | |

**DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS CROSS MOTION FOR JUDGMENT ON THE RECORD FOR JUDICIAL REVIEW**

Defendant, Hartford Life and Accident Insurance Company, proffers this Statement of Undisputed Facts in Support of its Motion for Judgment on the Record for Judicial Review.

**THE PARTIES**

1. Plaintiff, Idrissa Osei, seeks accidental death and dismemberment benefits under a group insurance policy pursuant to Employee Retirement Income Security Act ("ERISA"). See Complaint. (Document No. 1 on this Court's Docket).

2. Defendant, Hartford Life and Accident Insurance Company ("Hartford"), insures the group insurance policy. See Record for Judicial Review ("Record"), filed with this Court on March 14, 2007, at Bates stamped page 1 (all subsequent references to Bates stamped pages in the Record are in the following form: Record at 1).

**THE PLAN**

3. The Plan in place at the time of, and applicable to, Plaintiff's claim for accidental death and dismemberment benefits is Group Insurance Policy No. GL-034598 ("Accidental Death Plan"). Record at 1-29.

4. The Accidental Death Plan gives Hartford the discretion to both determine a claimant's eligibility for benefits and to construe and interpret the terms of the Plan, stating:

> We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

Record at 16.

> **We/Us/Our –** the Hartford Life and Accident Insurance Company.

Record at 19.

5. Under the terms of the Accidental Death Plan, benefits are payable for the following, subject to the Accidental Death Plan's exclusions:

> We will pay a benefit if You suffer an accidental injury while insured and:
> 1. a Loss results directly from such injury, independent of all other causes; and
> 2. such Loss occurs within 90 days after the date of the accident causing the injury.

Record at 8.

6. The Accidental Death Plan provides for the following exclusions:

> No benefit will be paid for a Loss caused or contributed to by:
> 1. sickness;
> 2. disease;
> 3. any medical treatment for items (1) or (2);
> 4. any infection, except a pus forming infection of an accidental cut or wound;
> 5. war or any act of war, whether war is declared or not;
> 6. any injury received while in any armed service of a country which is at war or engaged in armed conflict;
> 7. any intentionally self-inflicted injury, suicide, or suicide attempt, whether sane or insane;
> 8. taking drugs, sedatives, narcotics, barbiturates, amphetamines or hallucinogens unless prescribed for or administered by a licensed physician; or
> 9. the injured person's intoxication.
>
> Intoxication means that blood alcohol content or the results of other means of testing blood alcohol level meet or exceed the legal

> presumption of intoxication under the law of the state where the accident took place.

Record at 10.

**PLAINTIFF'S CLAIM FOR BENEFITS**

7. On or about April 16, 2005, Plaintiff's spouse, David Osei ("Decedent"), died. Record at 56.

8. Decedent was insured under the Accidental Death Plan. Record at 28.

9. On or about May 3, 2005, Plaintiff, through Decedent's employer, submitted a claim for the $26,000.00 accidental death benefit ("Accidental Death Benefits") under the Accidental Death Plan. Record at 30.

**THE CLAIM INVESTIGATION PERIOD**

Hartford Gathered Information Regarding the Circumstances of Decedent's Death

10. By letter to Plaintiff dated May 3, 2005, Alice Sowell-McCall, the Hartford examiner assigned to Plaintiff's claim, confirmed the receipt of Plaintiff's claim for Accidental Death Benefits. Ms. Sowell-McCall also indicated that she was seeking to obtain copies of the Police Report, Autopsy and Coroner's Report, and the Toxicology Report for Decedent and requested that Plaintiff sign an authorization releasing the reports or providing Hartford with copies of the reports. Record at 64.

11. On or about June 17, 2005, Ms. Sowell-McCall requested a copy of the Police Report from the Lincoln Police Department. Record at 131.

12. On or about October 4, 2005, Plaintiff provided Ms. Sowell-McCall with Decedent's death certificate, the Autopsy Report, the Forensic Toxicology Report, April 16, 2005 records from Rhode Island Hospital, and portions of the Police Report. Record at 65-104.

13. The Forensic Toxicology Report indicated that Decedent's blood alcohol level was 0.089% and that his blood also contained active and inactive metabolites of marijuana. Record at 153. The legal presumption of intoxication in Rhode Island is 0.08. R.I. Gen Laws § 31-27-2.

14. The Autopsy Report stated that Decedent had "acute ethanol intoxication." Record at 152.

15. On or about February 16, 2006, the Lincoln Police Department provided Ms. Sowell-McCall with the Police Report. Record at 134-138.

16. The Police Report indicated that Decedent was traveling in the right hand lane on Route 99 in Lincoln. Decedent's vehicle left the road and "traveled on the grass shoulder for 166'7" before striking and shearing from its base a metal light post which was located where the travel lane and grass meet." Decedent's vehicle then returned to the road where it traveled 83'10" before it left the road again and rolled over several times. Record at 136.

17. The Police Report indicated that the road was dry and there were no adverse weather conditions. Record at 142.

18. The Police interviewed the individual that had been traveling behind Decedent's vehicle prior to the collision and he stated that he saw nothing that would indicate what caused the accident. Record at 134.

19. The Police interviewed Decedent's Employer who reported that Decedent was scheduled to work 7:00pm to 11:00pm but due to an equipment malfunction was relieved of duty at 9:00pm. Decedent's Employer also indicated that it had come to her attention that Decedent had gone out for drinks with a co-worker. Record at 136.

20. The Police interviewed a coworker of Decedent's who said that he and decedent left work at 11:00pm and met at Murray's Pub at 11:45pm. The coworker said that he did not see Decedent consume any alcohol. The coworker said that he then went to Snub's Bar where he saw Decedent again and that Decedent did not seem impaired at Snub's. Record at 137.

21. The Police interviewed a woman with whom Decedent had a child and who described her relationship with Decedent as being "involved." The woman told the police that Decedent had appeared at her home at 2:30 am and she spoke with him through the window. She said he did not appear to be under the influence of any substance. Record at 137.

After Completing Its Investigation, Ms. Sowell-McCall Denied Plaintiff's Claim For Benefits And Informed Her Of Her Right To Appeal The Decision

22. On or about October 6, 2005, after completing its investigation into Plaintiff's claim for Accidental Death Benefits under the Accidental Death Plan, Hartford determined that Plaintiff was not entitled to benefits under the terms of the Accidental Death Plan because Decedent's death was not an accident because Decedent was intoxicated and high at the time of the collision, as well as, excluded from coverage because Decedent's death was contributed to by his intoxication and drug use, stating:

> The information reviewed demonstrates that although Mr. David Osei's death was due to injuries sustained in a motor vehicle accident, his death was caused or contributed to by an accident caused by his alcohol and drug intoxication. Therefore his death did not result from an injury independent of all other causes, because, his judgment and ability would have been affected by his intoxication. Since Mr. Osei did not suffer an accidental injury independent of all other causes, and his death was caused by an injury contributed to by a specific exclusion from coverage, no Group Accidental Death benefits are payable.

Record at 106.

## THE ADMINISTRATIVE APPEAL PERIOD

Plaintiff Appeals The Denial Of Her Claim For Accidental Death Benefits

23. On or about October 20, 2005, Plaintiff, through counsel, provided notice of her appeal, indicated that her position statement would follow, and requested copies of the policy and other relevant documents. Record at 108.

24. Hartford provided Plaintiff's counsel with the requested documents on November 15, 2005. Record at 110.

25. Plaintiff set forth her position through counsel in a letter dated November 22, 2005. Record at 111-113. Plaintiff argues that Decedent's blood alcohol level of 0.089 was not a significant contributory factor, that there was no evidence that Decedent was driving erratically, and that it was more likely the Decedent fell asleep at the wheel. Record at 111. Plaintiff's appeal also included a newspaper article that indicated that "drivers using hands-free cell phones are more impaired than drivers at the legal .08 percent BAC limit." Record at 113. Plaintiff did not submit any other additional evidence.

26. By letter dated January 27, 2006, Judith Rose, the appeals specialist assigned to Plaintiff's appeal, notified Plaintiff that she would need an additional 45 days to obtain a medical review of the records. Record at 119.

27. On January 6, 2006, Ms. Rose forwarded Plaintiff's claim to Kathleen M. Bell, a nurse consultant for Hartford, for review. Record at 174.

28. On January 31, 2006, Nurse Bell provided her report and the medical publications she relied on to Ms. Rose. Record at 186-216.

29. Nurse Bell's report indicated that the presence of Delta 9-THC, the active ingredient in marijuana in the blood indicated chronic or recent use of marijuana. Record at 188. She

also noted that, "there is almost universal agreement that a prominent danger of marijuana is its effect on motor performance. Preclinical, clinical and even actual driving tests under the influence of marijuana support an impairment of motor performance." Id.

30. Nurse Bell's report noted that:

> Low to moderate BAC's (0.03 to 0.05 percent) interfere with voluntary eye movements, impairing the eye's ability to rapidly track a moving target. . . Steering is a complex psychomotor task in which alcohol effects on eye-to-hand reaction time are superimposed upon the visual effects described above. Significant impairment in steering ability may begin as low as approximately 0.035 percent and rises as BAC increases. . . The most sensitive aspect of driving performance is the division of attention among component skills. Driver must maintain their vehicles in the proper land and direction (a tracking task) while monitoring the environment for vital safety information, such as other vehicles, traffic signals, and pedestrians. Alcohol-impaired subjects who are required to divide their attention between two tasks tend to favor one of them. Therefore, alcohol-impaired drivers tend to concentrate on steering, becoming less vigilant with respect to safety information. Results of numerous studies indicate that divided attention deficits occur as low as 0.02 percent BAC.

Record at 192-93.

31. On or about March 3, 2006, Hartford upheld its initial denial of Plaintiff's claim for Accidental Death benefits, stating:

> [T]he information available to us does not substantiate that [Decedent's] death was the result of accidental injury directly, and independent of any other cause. Though you assert his death as due to accidental injury, which we do not concede, the information available does in fact document that his death was caused or contributed to by his intoxication, the use of drugs and alcohol. The information available from the medical experts reporting in this case clearly documents this loss was caused or contributed to by the use of drugs and ethanol, the injured person's intoxication; a loss expressly excluded from coverage under this Policy. Accordingly, the denial of this claim for Accidental Death benefits was appropriate and that decision will stand.

Record at 127.

32. The March 3, 2006 letter also stated:

> It is reasonably foreseeable that individuals exceeding legal presumption of intoxication experience impairments in functional ability due to intoxication. It is also reasonably foreseeable that operation of a motor vehicle while impaired due to intoxication is a reckless and inherently dangerous act that can be expected to result in serious injury or death. In the face of this knowledge, disregard of the danger of operation of a motor vehicle while intoxicated, is not considered reasonable behavior and serious injury or death cannot be considered accidental when it is the foreseeable result of the Insured's voluntary act. Because injury or death was a foreseeable outcome of the operation of a motor vehicle while intoxicated, [Decedent's] death resulting from injuries sustained in a motor vehicle crash occurring April 16, 2005, was not the result of an accident independent of any other cause.

Record at 127.

Respectfully Submitted,

Defendant Hartford Life and Accident Insurance Company,

By its attorney

/s/Katherine R. Parsons

Katherine R. Parsons (6810)
Crevier & Ryan, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115-5532
Tel: (413) 787-2400
Facsimile: (413) 781-8235
Email: kparsons@crevierandryan.com

CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 30th day of April, 2007.

/s/Katherine R. Parsons