**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

IDRISSA OSEI,
Plaintiff,
v. C.A. No. 06-274T

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY
Defendant.

**DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Defendant, Hartford Life and Accident Insurance Company ("Hartford"), submits this Opposition to Plaintiff's Memorandum in Support of Plaintiff's Cross Motion for Summary Judgment and In Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Motion for Judgment") (Document No. 20). As explained below: 1) Plaintiff's arguments for the legal standards and methodology that the Court should apply in this case are incorrect; and 2) contrary to Plaintiff's allegations, this Court must uphold Hartford's decision because it was plausible and supported by the evidence in the Record for Judicial Review (the "Record").

## A. PLAINTIFF'S ARGUMENTS FOR THE LEGAL STANDARDS AND METHODLOGY THAT THE COURT SHOULD APPLY IN THIS CASE ARE INCORRECT

As explained below: 1) Plaintiff incorrectly argues that the Court should follow the analysis set forth in Stamp v. Metropolitan Life Ins. Co., 466 F.Supp.2d 422 (D.R.I. 2006); 2) Plaintiff incorrectly argues that the Accidental Death Plan contains a "strict causation requirement"; and 3) despite conceding that Plaintiff's claim is subject to arbitrary and capricious review, the Plaintiff makes several arguments that are only relevant if Plaintiff's claim is subject to de novo review.

First, Plaintiff errs in her recommendation that the Court follow the analysis set forth in Stamp. Plaintiff's Motion for Judgment at 5. Apparently Plaintiff thinks Stamp is applicable to the present case because, like this case, it involved a drunk driving incident. There are, however, a number of distinctions between Stamp and the case presently before the Court that render a complete adoption of the Stamp analysis inappropriate. The Court in Stamp was called upon to determine solely whether the insurer's interpretation of the undefined term "accident" in the policy was reasonable. That is not the case here. In this case, unlike Stamp, the Accidental Death Plan includes a specific exclusion for loss contributed to by intoxication or drug use. The Court will not only be determining whether Hartford's conclusion that Decedent's death was the result of an accident was plausible, but more importantly, it will be determining whether Hartford's determination that Decedent's death was excluded under the drug and intoxication exclusion was plausible. The Stamp analysis is not applicable to the Court's review of Hartford's determination that Decedent's death was excluded under the drug and intoxication exclusion.[1]

Second, Plaintiff states that the Accidental Death Plan in this case contains a "strict causation requirement." Plaintiff's Motion for Judgment at 5. Contrary to Plaintiff's

---

[1] With respect to this Court's review of Hartford's determination that Decedent's death was not an accident, see Hartford's Motion for Judgment at 8-11, the analysis set forth in the Stamp case is not applicable because the Court in Stamp did not give appropriate deference to the administrator's interpretation of the term "accident." In Stamp the insurer had the discretion to interpret the terms of the plan and to determine eligibility for benefits. Consequently, the Court was to review the insurer's decision in Stamp under arbitrary and capricious review. The First Circuit has clearly instructed that where the insurer has the discretion to interpret the terms of the Plan, the Court must not substitute its judgment for that of the insurer whose interpretation of the plan "will not be disturbed if it is **reasonable**." Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998). The Stamp Court erred by imposing its own interpretation of the term "accident" on the parties, essentially reviewing the insurer's interpretation of the term "accident" de novo, rather then reviewing the insurer's interpretation under arbitrary and capricious review and upholding it if it was reasonable.

unsupported allegation, the Accidental Death Plan in this case does not contain a strict causation requirement, but rather excludes loss "caused **or contributed** to by . . . taking drugs . . . or . . . intoxication." Facts at ¶ 6. Consequently, Hartford did not need to determine that Decedent's death was caused by his intoxication or drug use, but rather, it was sufficient for Hartford to conclude that Decedent's drug use and intoxication contributed to his death.

Finally, Hartford argues and Plaintiff agrees that the issue before this Court is "whether the decision of Hartford Life and Accident Insurance Company denying accidental death benefits to Plaintiff, Decedent's beneficiary, was arbitrary and capricious." Plaintiff's Motion for Judgment at 2; Hartford's Memorandum in Support of its Cross Motion for Judgment on the Record for Judicial Review ("Hartford's Motion for Judgment") at 2-4. Although conceding arbitrary and capricious review, Plaintiff makes several arguments that would only be relevant if the Court were reviewing this claim under de novo review.

For example, Plaintiff argues that, "Hartford has not shown that David Osei's death was caused or contributed to [by] alcohol or drug use." Plaintiff's Motion for Judgment at 4. This argument would only be relevant if the Court were reviewing Hartford's decision under the de novo standard of review. Contrary to Plaintiff's allegations and as explained in detail in Hartford's Motion for Judgment, under arbitrary and capricious review, Hartford does not have to prove that Decedent's death was caused or contributed to by alcohol or drug use. The Court is not reviewing Hartford's decision to determine if it was correct or even to determine if it is consistent with what the Court would decide if it were reviewing the case de novo. Rather, the Court is reviewing Hartford's decision, under the arbitrary and capricious standard of review, to determine if it was **plausible and supported by evidence in the record**. Hartford's Motion for Judgment at 2-4; Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002). Even if Plaintiff could

demonstrate that Hartford did not conclusively prove that Decedent's death was caused or contributed to by intoxication or drug use, which she cannot, it would not be enough. For Plaintiff to prevail under arbitrary and capricious review, she would have to show, not only that Hartford's decision was wrong, but also that it was irrational.

Plaintiff also argues that the Court should forego "the traditional summary judgment practice of drawing inferences in favor of the non-moving party is suspended," because there is a dispute over plan interpretation in this case. Plaintiff's Motion for Judgment at 3. Again, this argument only makes sense if the Court is reviewing Hartford's decision under the de novo standard of review. Contrary to Plaintiff's argument, under arbitrary and capricious review, where the insurer has the discretion to, not only determine eligibility, but also to interpret the terms of the Plan, the Court does not review and interpret the Plan de novo. Rather, much like the Court's review of the insurer's determination of eligibility for benefits, the Court must not substitute its judgment for that of the insurer whose interpretation of the plan "will not be disturbed if it is **reasonable**." Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998)(emphasis added). Accordingly, the Court may not deviate from the clear method of review of ERISA cases set forth by the First Circuit:

> Where as here review is under the arbitrariness standard, the ordinary question is whether the administrator's action on the record before him was unreasonable. . . Assuming that the decision is to be made by the judge based solely on the record made at the administrative level, summary judgment is merely a mechanism for tendering the issue and no special inferences are to be drawn in favor of a plaintiff resisting in summary judgment; on the contrary, the rationality standard tends to resolve doubts in favor of the administrator.

Liston v. Unum Corp. Officer Severance Plan, 330 F. 3d 19, 24 (1st Cir. 2003)(internal citations omitted). Consequently, this Court must not draw factual inferences in favor of the Plaintiff, but rather, must resolve doubts in favor of Hartford under the arbitrary and capricious standard.

As discussed above: 1) the Court should not follow the analysis set forth in Stamp v. Metropolitan Life Ins. Co., 466 F.Supp.2d 422 (D.R.I. 2006); 2) the Accidental Death Plan does not contain a "strict causation requirement"; and 3) the Court must review Hartford's decision under the arbitrary and capricious standard of review and uphold Hartford's decision because it was plausible and supported by the evidence in the Record for Judicial Review.

**B. THE COURT MUST UPHOLD HARTFORD'S DECISION BECAUSE IT WAS PLAUSIBLE AND SUPPORTED BY THE EVIDENCE IN THE RECORD**

As explained above, the Court must uphold Hartford's decision if it was plausible and as such, not arbitrary and capricious. Plaintiff argues that Hartford's decision to deny benefits was arbitrary and capricious because: "1) there is insufficient evidence to conclude Mr. Osei was indeed intoxicated; and 2) there is no evidence to link the presence of ethanol and Delta-9 THC to the accident." Plaintiff's Motion for Judgment at 6. Contrary to Plaintiff's allegations: 1) there was more than sufficient evidence in the Record for Hartford to determine that Decedent was intoxicated; and 2) there was not only more than sufficient evidence in the Record for Hartford to conclude that Decedent's intoxication and drug use contributed to his death – there was no evidence in the Record to support any other conclusion.

**1. The Record For Judicial Review Contains "Unequivocal Evidence" of Decedent's Intoxication.**

Plaintiff argues that there is insufficient evidence to conclude that Decedent was intoxicated. Plaintiff's Motion for Judgment at 6. In support of her argument, Plaintiff suggests: 1) the Medical Examiner's conclusion that Decedent was intoxicated is flawed; and 2) the police interviews with Decedent's friend, girlfriend and with the driver that was following Decedent's vehicle at a distance, demonstrate that Decedent was not impaired. As explained below: 1) there is more than sufficient evidence in the Record to support Hartford's conclusion that Decedent

was intoxicated; 2) there is no evidence in the Record that the Medical Examiner's conclusion that Decedent was intoxicated was flawed; and 3) the police interviews do not support Plaintiff's claim that Decedent was not intoxicated.

First, contrary to Plaintiff's claims, the Record contains more than sufficient evidence that Decedent was intoxicated. As explained in Hartford's Motion for Judgment and as recognized by Plaintiff in her Motion for Judgment, the Forensic Toxicology Report indicated that Decedent's blood alcohol level was 0.89mg/dl or 0.089%. Hartford's Motion for Judgment at 4-5; Plaintiff's Motion for Judgment at 5. In addition, the Autopsy Report stated that Decedent had " acute ethanol intoxication." Facts at ¶ 14. The Accidental Death Plan specifically defines "intoxication" stating, "Intoxication means that blood alcohol content or the results of other means of testing blood alcohol level meet or exceed the legal presumption of intoxication under the law of the state where the accident took place." Facts at ¶ 6. At 0.089, Decedent's blood alcohol level exceeded the 0.08 legal presumption of intoxication in Rhode Island. R.I. Gen. Laws § 31-27-2. Consequently, under the laws of Rhode Island and under the terms of the Accidental Death Plan, Decedent was unquestionably intoxicated.

Second, Plaintiff insinuates – without providing any evidence – for the very first time in her Motion for Judgment, that the Forensic Toxicology Report may not be accurate because it was dated three days after Decedent's death. Plaintiff's Motion for Judgment at 5. During the administrative review, Hartford informed Plaintiff that it concluded that Plaintiff was intoxicated based on the Forensic Toxicology Report. Record for Judicial Review at 106. Although having ample opportunity during the administrative review period, Plaintiff did not provide any evidence that the Medical Examiner's conclusion that Decedent was intoxicated, was flawed. Consequently, there is no evidence in the Record for Judicial Review to support Plaintiff's

suggestion that the Medical Examiner's conclusion that Decedent was intoxicated was flawed. Accordingly, there is no basis to conclude that the Forensic Toxicology Report is flawed in any respect.

Finally, Plaintiff relies heavily on the summaries of the police interviews with Decedent's friend, George Ackah; Decedent's girlfriend, Elizabeth Charette; and the individual following Decedent's car from a distance, John Arzoomanian to support her argument that Decedent was not intoxicated. Plaintiff's Motion for Judgment at 4, 6. Mr. Ackah was a friend of Decedent's from work. Mr. Ackah told the police that he and Decedent left work together and went to Murray's Pub. Facts at ¶ 20. Mr. Ackah said that he did not see Decedent consume any alcohol. Id. Mr. Ackah told police that he left Murray's and went to Snub's Bar where he saw Decedent again. Id. Mr. Ackah told the police that Decedent did not appear to be impaired. Id. First, Mr. Ackah admits he was not with Decedent all night so he does not know what Decedent drank, smoked or did at Murray's or at Snub's. Second, Mr. Ackah was drinking and his perception of Decedent's state of impairment was likely clouded by his own impairment. Finally, Mr. Ackah's apparently biased and professionally unqualified statements are trumped by the Forensic Toxicology Report, which is "unequivocal evidence of [Decedent's] intoxication at the time of death." Stamp v. Metropolitan Life Insurance Company, 466 F.Supp.2d 422, 426 (D.R.I. 2006).

Ms. Charette told the police that she had a child with the Decedent and described their relationship as being "involved." Facts at ¶ 21. Ms. Charette told the police that Decedent appeared at her home at 2:30 in the morning and talked to her through the window. Id. Despite the fact that Decedent's behavior – showing up at 2:30 in the morning and talking through the window – in and of itself is indicative of intoxicated behavior, Ms. Charette told the police that

Decedent did not appear to be under the influence of any substance. Facts at ¶ 21. Like Mr. Ackah, Ms. Charette's statements were biased, professionally unqualified and are trumped by the Forensic Toxicology Report, which conclusively demonstrates that Decedent was in fact intoxicated.

Mr. Arzoomanian told the police that he was following Decedent's vehicle from distance. Record for Judicial Review at 134. Mr. Arzoomanian told the police that he saw Decedent's vehicle leave the roadway, strike a light fixture and immediately roll over. Id. He said he saw nothing to indicate what caused the accident. Id. Based on Mr. Azroomanian's statement to the police, Plaintiff argues that "there were no signs of erratic driving, no weaving in and out of lanes, no speeding or sudden changes in speed or anything to suggest impaired driving ability." Plaintiff's Motion for Judgment at 6.

Both Mr. Arzoomian's perception and Plaintiff's arguments, based on Mr. Arzoomian's perceptions are flawed. Mr. Arzoomian's perception was flawed because his claim that Plaintiff's car rolled over after first leaving the roadway was incorrect. The Police Report indicated that Decedent was traveling in the right hand lane on Route 99 in Lincoln when Decedent's vehicle left the road and "traveled on the grass shoulder for 166'7" before striking and shearing from its base a metal light post which was located where the travel lane and grass meet." Facts at ¶ 16. Decedent's vehicle then returned to the road where it traveled 83'10" before it left the road again and rolled over. Facts at ¶ 16. It appears that Mr. Arzoomanian, while focusing on his own driving and traveling at a distance from Decedent, may not have seen the entire series of events leading to the collision.

More significantly, Plaintiff's argument that Mr. Arzoomanian's report leads to the conclusion that Decedent's intoxication did not contribute to his death does not make sense. The

collision occurred under circumstances where there was nothing other than intoxication to indicate what caused the accident – the road was dry, there were no adverse weather conditions, and there were no other roadway conditions that are attributable as the cause of the collision – there was no intervening superceding cause. The fact that Mr. Arzoomanian did not appear to notice that Decedent's driving indicated that he was intoxicated, does not trump the fact that the only evidence in the Record demonstrates that he was intoxicated.

As explained above, the Record for Judicial Review contains unequivocal evidence of Decedent's intoxication. Consequently, Hartford's conclusion that Decedent was intoxicated was entirely plausible and supported by the Record.

**2. Hartford's Determination That Decedent's Intoxication And Drug Use Contributed to His Death Was Plausible And Supported By the Evidence.**

Plaintiff argues that, "there is no evidence to link the presence of ethanol and Delta-9 THC to the accident." Plaintiff's Motion for Judgment at 6. Plaintiff does not offer any evidence or theory to support her position that Decedent's death was not contributed to by his intoxication and drug use because there are none. Rather, in support of her position, Plaintiff does nothing other then suggest that "[b]y excluding any claim based on the mere presence of [ethanol and Delta-9 THC] necessitates denying benefits to those situations in which resulting accidents had nothing to do with these substances," Plaintiff's Motion for Judgment at 6, and relies on Eckelberry v. Reliastar Life Ins. Co., 402 F.Supp.2d 704 (S.D.W.VA 2005) to support this position, Plaintiff's Motion for Judgment at 6-7.

As explained below: 1) the only reasonable conclusion in this case is that Decedent's intoxication and drug use contributed to Decedent's death; 2) Hartford's decision does not necessitate the denial of benefits when a decedent's intoxication or drug use has nothing to do with his death; and 3) Eckelberry does not support Plaintiff's position.

First, the only reasonable conclusion is that Decedent's intoxication and drug use contributed to his death. As discussed in section B.1. above, Plaintiff was clearly intoxicated under the terms of the Accidental Death Plan and under Rhode Island law. In addition, the Record for Judicial Review also demonstrates that Decedent's blood contained active and inactive metabolites of marijuana, indicating chronic or recent use of marijuana. Facts at ¶ 13, 29. The Record contains a medical report explaining that marijuana use and alcohol intoxication are medically known to adversely affect the users motor skills and the state of Rhode Island has determined that an individual with a blood alcohol level of .08 is so impaired that the state does not want those individuals driving cars and have made it illegal to drive with a blood alcohol level of .08 or greater. Facts at ¶ 29, 30; R.I. Gen. Laws § 31-27-2. Moreover, as discussed above, the road was dry, there were no adverse weather conditions, the witness saw nothing to indicate the cause of the collision, and the Plaintiff has not presented any evidence to support an intervening superceding cause of the collision. As such, the only reasonable explanation is that Decedent's intoxication and drug use contributed to his death. Consequently, Hartford's conclusion was plausible and supported by the evidence in the Record for Judicial Review.

Second, contrary to Plaintiff's unfounded and unsupported allegations, Hartford's decision to deny benefits in this case does not necessitate the denial of benefits when a decedent's intoxication or drug use has nothing to do with his death. In this case, there was no other explanation for the collision other than Decedent's intoxication: the road was clear, the weather was good, and there were no reported roadway conditions to which the collision could be attributable. Contrary to Plaintiff's suggestion, if Decedent was intoxicated and the evidence demonstrated that there was an intervening superceding cause – his death was caused by something such as decedent being shot or some other independent cause in fact – the Decedent's

death would not be excluded under the intoxication and drug use exclusion because the drugs and alcohol would have had nothing to do with his death. In this case, however, there is no evidence that the collision resulted from anything other than Decedent's intoxication and drug use. Consequently, it was plausible for Hartford to conclude that Decedent's intoxication and drug use contributed to Decedent's death.

Finally, Plaintiff cites to Eckelberry, a U.S. District Court decision out of West Virginia that found for the plaintiff, concluding that the decedent could not have expected to die due to driving while intoxicated. What Plaintiff fails to note is that the Fourth Circuit reversed the District Court's decision in Eckelberry and upheld the insurer's decision to deny benefits where the insurer determined that death or serious injury was not an "unexpected" result of driving while intoxicated. Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340 (4th Cir. 2006). Moreover, Eckelberry, like Stamp, did not involve a policy with a specific exclusion for loss contributed to by intoxication and/or drug use. Rather, in Eckelberry, the Court was reviewing the insurer's interpretation of the policy definition of "accident" as a loss that was "unexpected." Eckelberry, 402 F.Supp.2d at 707. Unlike the Courts in Eckelberry and Stamp, this Court must review Hartford's determination that Decedent's death was specifically excluded under the intoxication and drug use exclusion. Consequently, Eckelberry does not support Plaintiff's position that there was insufficient evidence to support Hartford's decision.

For the reasons set forth above and in Hartford's Motion for Judgment, Hartford's conclusion that Decedent's death was caused or contributed to by Decedent's intoxication and/or drug use was plausible and supported by the evidence in the Record for Judicial Review.

## CONCLUSION

For the reasons set forth above and in Hartford's Motion for Judgment, the Court must grant Hartford's Motion for Judgment and deny Plaintiff's Motion for Judgment.

Respectfully Submitted,

Defendant Hartford Life and Accident Insurance Company,

By its attorney

/s/Katherine R. Parsons

Katherine R. Parsons (6810)
Crevier & Ryan, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115-5532
Tel: (413) 787-2400
Facsimile: (413) 781-8235
Email: kparsons@crevierandryan.com

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 24th day of May, 2007.

/s/Katherine R. Parsons